**UNITED STATES of America, Plaintiff,**

v.

**Royal N. HARDAGE, et al., Defendants.**

**ADVANCE CHEMICAL COMPANY, et al., Hardage Steering Committee Defendants and Third–Party Plaintiffs,**

v.

**ABCO, INC., et al., Third–Party Defendants.**

**No. CIV–86–1401–P.**

United States District Court, W.D. Oklahoma.

Dec. 8, 1989.

John R. Barker, Sr. Counsel, Environmental Enforcement Section, U.S. Dept. of Justice, Anna L. Wolgast, Steven Novick, Washington, D.C., for U.S.

Charles DeSaillan, Washington, D.C., for EPA.

Kenneth N. McKinney, Robert D. Tomlinson, Mark D. Coldiron, Oklahoma City, Okl., Amanda Birrell, Austin, Tex., Karl Bourdeau, Tom Richichi, Washington, D.C., Bruce H. Brubaker, Fairlawn, Ohio, Pamela J. Cissik, Morristown, N.J., Stephen Fink, James C. Morriss, III, Dallas, Tex., Allan Gates, Little Rock, Ark., Michael D. Graves, Tulsa, Okl., Walter J. Hryszko, Houston, Tex., Jay Johnson, Dallas, Tex., Jeffrey N. Martin, Washington, D.C., David C. Minc, Akron, Ohio, Tim Olsen, Tulsa, Okl., Howard Seitzman, Austin, Tex., Charles W. Shipley, Blake Champlin, Tulsa, Okl., Elizabeth M. Weaver, Los Angeles, Cal., Jerome T. Wolf, Carl Helmstetter, Kansas City, Mo., for Hardage Steering Committee.

Andrew M. Coats, Barbara Hoffman, Oklahoma City, Okl., Eva M. Fromm, Houston, Tex., Joseph F. Guida, Jean McLemore, Steve McKinney, Oklahoma City, Okl., Calvin Sawyier, Chicago, Ill., Harry R. Palmer, Jr., Kirk W. Koester, Oklahoma City, Okl., Jim Smith, John D. White, Doug Craig, Gerald Schulke, Steve LeSatz, Houston, Tex., Irwin H. Steinhorn, Oklahoma City, Okl., J. Kemper Will, Englewood, Colo., on-Hardage Steering Committee.

PHILLIPS, District Judge.

Before the Court is the plaintiff United States' motion for partial summary judgment on response costs filed September 11, 1989. The United States seeks summary judgment against each of the defendants on the issue of their liability under Section 107(a)(4)(A) of CERCLA[1], 42 U.S.C. § 9607(a)(4)(A), for response costs incurred by the United States in conjunction with the Hardage site. The amount of response costs requested by the United States in this motion for partial summary judgment is $6,292,065.25. In addition, the United States also seeks a declaration that the defendants are liable for the United States' future response costs at the Hardage site. Six individual defendants or groups of defendants responded in opposition.[2] With this Court's approval, the United States filed a joint reply to all the responses on November 6, 1989. For the reasons set

---

[1]. Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-75.

[2]. The Hardage Steering Committee defendants ("HSC") responded in opposition on October 20, 1989. L & S Bearing Company ("L & S Bearing") responded in opposition on October 18, 1989 and adopted and incorporated by reference HSC's response and statement of material facts as to which a genuine issue exists.

Oklahoma National Stock Yards ("Stock Yards") responded in opposition on October 6, 1989. Stock Yards indicates the liability issues underlying the United States' statement of material fact are already before the Court in motions for summary judgment as to liability previously filed by Stock Yards and the United States. This Court denied Stock Yards' motion for summary judgment on November 9, 1989. On May 10, 1989, Stock Yards and United States filed a stipulation on issues relating to liability, however, there has been no final finding of liability as to Stock Yards.

CATO Oil and Grease Company ("CATO") responded in opposition on October 5, 1989.

CATO cites to its pending motion for summary judgment on CERCLA's constitutionality to argue this Court should deny the United States' motion for partial summary judgment on response costs or postpone ruling on the government's motion until CATO's motion is decided. This Court denied CATO's motion for summary judgment on November 28, 1989.

U.S. Pollution Control, Inc. ("USPCI") opposed the United States' motion on October 6, 1989 stating USPCI has a pending motion for summary judgment based upon its status as a common carrier. This Court denied USPCI's motion for summary judgment on October 3, 1989. However, USPCI has strongly defended against the United States' motion for partial summary judgment on USPCI's liability which is still pending.

JOC Oil Exploration Company, Inc. ("JOC") filed a motion in opposition on September 27, 1989. JOC argues there has been no finding of liability against JOC, therefore JOC cannot be found liable for the United States' response costs.

forth below, the United States' motion for partial summary judgment for response costs is GRANTED, with the exception of the request for indirect costs of the Department of Justice ("DOJ"), against defendants who have stipulated to liability or been found liable.[3] In addition, the United States' request for a declaratory judgment finding the defendants liable for the United States' future response costs is also GRANTED against these same defendants, with the exception of the indirect costs of DOJ.[4]

## I. STANDARD FOR SUMMARY JUDGMENT

■ The facts presented to the court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Educ. v. Pico,* 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. Only genuine disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, the movant must show entitlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985); Fed.R.Civ.P. 56(c).

Although the Court must view the facts and inferences to be drawn from the record in the light most favorable to the nonmoving party, "even under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chem. Co.,* 849 F.2d 1269, 1273 (10th Cir.1988). As stated by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R. Civ.P. 1).

The Supreme Court articulated the standard to be used in summary judgment cases, emphasizing the "requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court stated that the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252, 106 S.Ct. at 2512. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to Fed.R.Civ.P. 56(e)).

■ The Court determines whether the nonmovant has submitted evidence of the essential elements of the claim by viewing "the evidence presented through the prism of the substantive evidentiary burden" so that a reasonable factfinder could find for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 254, 106 S.Ct. at 2513. The Court is only required to draw reasonable inferences from the evidence. *See Lucas v. Dover Corp., Norris Div.,* 857 F.2d 1397, 1400 (10th Cir.1988) (J.N.O.V. standard). Implausible inferences can be rejected. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 585–598, 106 S.Ct. at 1355–1362 (rejecting implausible inference of intent in antitrust conspiracy).

■ A party resisting a motion for summary judgment must do more than make conclusionary allegations, it "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Dart Indus. v. Plunkett Co. of Okla., Inc.,* 704 F.2d 496, 498 (10th Cir. 1983); *see Lake Hefner Open Space Alliance v. Dole,* 871 F.2d 943, 945–46 (10th

**3.** Certain of the defendants, including but not limited to CATO, USPCI, JOC, Stock Yards, and Rockwell International have not stipulated to liability nor been found liable under sections 106(a) & 107(a) of CERCLA, 42 U.S.C. §§ 9606(a) & 9607(a). Should these defendants be found liable in the future, they would also be jointly and severally liable for these response costs.

**4.** See footnote 3.

Cir.1989) (Plaintiff did not "by affidavits or as otherwise ... set forth specific facts showing that there is a genuine issue for trial."). The Court will not grant summary judgment based on a battle of affidavits that raise genuine material disputes. *De Vargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 719 (10th Cir.1988). However, affidavits must be submitted in good faith. Fed.R.Civ.P. 56(g). And, conclusionary affidavits are insufficient to defeat summary judgment. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1380 & n. 7 (10th Cir.1980). Conclusionary opinions of experts that fail to provide specific facts are insufficient as well. *Evers v. General Motors Corp.*, 770 F.2d 984, 986–87 (11th Cir.1985).

## II. UNDISPUTED FACTS

Rule 14(B) of the Western District of Oklahoma provides a framework for determining undisputed facts at the summary judgment stage. The Rule provides:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies. The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

W.D.Okla.R. 14(B).

An analysis of the United States' motion and reply and the responses of HSC, L & S Bearing by reference, Stock Yards, and USPCI reveal the following facts are undisputed within the meaning of Rule 14(B) for the purposes of this motion only. Fed.R. Civ.P. 56(e); W.D.Okla.R. 14(B).

1. Hazardous substances are located at the Hardage site.[5]

2. Hazardous substances have been released from the Hardage site into the soil and groundwater at, around, and beneath the Hardage site.[6]

3. Hazardous substances from the Hardage site have migrated from the site and have contaminated or threaten to contaminate the Criner Creek/North Criner Creek alluvial aquifer.

4. The hazardous substances at the Hardage site are commingled.[7]

5. Each of the defendants to this action is an owner or operator of the Hardage site, a person who disposed of or arranged for the disposal of hazardous substances at the Hardage site, or a person who transported hazardous substances to the Hardage site for disposal and selected the Hardage site as the site for disposal of such hazardous substances.[8]

6. Environmental Protection Agency ("EPA") Headquarters' employees performed response activities at the Hardage site.[9]

---

5. The United States' statement of material facts as to which there is no genuine issue contains 33 undisputed facts. Facts nos. 30 and 31 relate to indirect costs of response activities performed by DOJ personnel at the Hardage site and the amount of those costs. Because the Court finds genuine issues of material fact as to United States' listed facts 30 and 31, these two facts are not included in the Court's statement of undisputed facts, and the Court's undisputed facts have been renumbered.

6. Stock Yards stipulated to undisputed facts no. 1, 2, and 5 in its stipulation on issues relating to liability on May 10, 1989.

7. HSC, L & S Bearing by reference, and USPCI either do not contest, or are willing that the above-listed factual allegations nos. 1–4 be deemed admitted, for purposes of this summary judgment motion. HSC's Response Brief at 2; USPCI's Response at 2.

8. HSC argues not all HSC defendants have stipulated not to contest liability, and that the liability stipulations speak for themselves. HSC's Response Brief at 3. The Court has reviewed the stipulations. At footnote 3 above, the Court notes that certain of the defendants have not yet been found liable.

9. HSC asserts fact disputes as to each of the United States' undisputed facts nos. 6–33, 31 of which are listed here and are incorporated herein as the Court's findings of undisputed facts. As discussed in Section V of this Order, the Court finds genuine issues of material fact only as to the Department of Justice's indirect costs, United States' proposed undisputed facts nos. 30 & 31.

7. The United States has incurred costs for the response activities performed at the Hardage site by EPA Headquarters' employees, in the form of payroll expenses of those employees, in the amount of at least $49,795.81.

8. The United States has incurred costs of at least $9,273.71 for the travel expenses of EPA Headquarters employees traveling to perform response activities at the Hardage site.

9. EPA Region VI employees have performed response activities at the Hardage site.

10. The United States has incurred costs for the response activities performed by Region VI employees at the Hardage site of at least $288,160.95 in payroll expenses for those employees.

11. The United States has incurred costs of at least $4,158.65 in amounts paid by Region VI to private vendors (exclusive of travel expenses of Region VI personnel) in connection with response activities of Region VI personnel at the Hardage site.

12. Region VI personnel have traveled to perform response activities at the Hardage site.

13. The United States has incurred costs of at least $38,928.24 in paying the travel expenses of Region VI employees traveling to perform response activities at the Hardage site.

14. CH2M Hill has conducted response activities at the Hardage site pursuant to EPA Contract No. 68–01–6692, Work Assignment No. 31–06M08.0.

15. The United States has incurred costs of at least $846,956.80 in payments to CH2M Hill for the response activities CH2M Hill conducted at the Hardage site pursuant to Contract No. 68–01–6692, Work Assignment No. 31–06M08.

16. CH2M Hill has performed response activities at the Hardage site pursuant to EPA Contract No. 68–01–7251, Work As-

signments Nos. 106–6608.0, 142–6N08.0, & 167–6L08.0.

17. The United States has incurred costs of at least $1,326,308.25 in payments to CH2M Hill for response activities at the Hardage site conducted pursuant to EPA Contract No. 68–01–7251, Work Assignment Nos. 106–6608.0, 142–6N08.0, & 167–6L08.0.

18. Techlaw, Inc. ("TechLaw") (formerly known as Intera) has performed response activities at the Hardage site pursuant to EPA Contract No. 68–01–6838.

19. The United States has incurred costs of at least $18,955.38 in payments to TechLaw for response activities at the Hardage site conducted pursuant to Contract No. 68–01–6838.

20. TechLaw has performed response activities at the Hardage site pursuant to EPA Contract No. 68–01–7104.

21. The United States has incurred costs of at least $105,552.38 in payments to TechLaw for response activities conducted pursuant to Contract No. 68–01–7104.

22. TechLaw has performed response activities at the Hardage site pursuant to EPA Contract No. 68–01–7369.

23. The United States has incurred costs of at least $162,458.57 in payments to TechLaw for response activities conducted pursuant to Contract No. 68–01–7369.

24. Jacobs Engineering Group, Inc. ("Jacobs") has performed response activities at the Hardage site pursuant to EPA Contract No. 68–01–7351, Work Assignment No. 172.

25. The United States has incurred costs of at least $313,554.00 in payments to Jacobs for response activities conducted pursuant to Contract No. 68–01–7351, Work Assignment No. 172.

26. Viar and Company ("Viar") and contract laboratories participating in EPA's Contract Laboratory Program have performed response activities at the Hardage site.

USPCI disputes the United States' listed facts 6–33 alleging "not all costs asserted are response costs or response activities which are not inconsistent with the National Contingency Plan, and/or to the extent they are indirect costs." USPCI's Response at 2. However, USPCI provided no affidavits or evidence to support this assertion as required by Fed.R.Civ.P. 56(e).

27. The United States has incurred costs of at least $433,425.87 in payments to Viar and contract laboratories participating in EPA's Contract Laboratory Program for response activities conducted at the Hardage site.

28. DOJ personnel have performed response activities at the Hardage site.

29. The United States has incurred costs of at least $405,035.00 in payroll expenses for the response activities conducted at the Hardage site by DOJ personnel.

30. DOJ has contracted with private vendors to perform response activities at the Hardage site.[10]

31. The United States has incurred at least $1,438,638.00 in payments to private vendors which have performed response activities at the Hardage site under contract with DOJ.[11]

United States' Brief at 2–8; HSC's Response Brief at 2–24; USPCI's Response Brief at 2; Stock Yards' Brief at 2.

## III. AUTHORITY FOR AWARDING RESPONSE COSTS

In December of 1980, Congress enacted CERCLA, 42 U.S.C. §§ 9601–9675, "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." H.R.Rep. No. 1016(I), 96th Cong., 2d Sess. 22, *reprinted in,* 1980 U.S. Code Cong. & Admin.News 6119, 6125; *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1500 (6th Cir.1989). CERCLA was intended " 'primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes.' " *Walls v. Waste Resource Corp.,* 823 F.2d 977, 981 (6th Cir. 1987) (citation omitted).

Under Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), the President of the United States is authorized to respond with "remedial" or other "removal" actions against any actual or threatened release of any hazardous substance that poses an imminent and substantial threat to the public health and welfare. *United States v. R.W. Meyer, Inc.,* 889 F.2d at 1500. In large measure, the President has delegated his authority under CERCLA to the Administrator of EPA. *Id.* at 1500 n. 7; *see* Executive Order No. 12,580, 52 Fed.Reg. 2923 (Jan. 23, 1987), *reprinted in* 42 U.S.C. § 9615 note, pp. 168–72 (1989).

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), imposes liability on four categories of persons, including owners, "generators," and "transporters" who selected hazardous waste sites, for costs including:

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

42 U.S.C. § 9607(a)(4)(A). This section authorizes the government to recover *all* costs of removal or remedial response actions. *United States v. R.W. Meyer, Inc.,* 889 F.2d at 1500.

Crucial terms within this cost provision have been broadly defined elsewhere in CERCLA. The terms "remove" or "removal" are defined in definitional section 9601(23) as follows:

The terms "remove" or "removal" means [sic] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damages to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to ... action taken under section 9604(b) of this title....

---

**10.** Formerly United States' undisputed fact no. 32.

**11.** Formerly United States' undisputed fact no. 33.

42 U.S.C. § 9601(23) (footnote omitted). The section 9604(b)—authorized action, referenced in the above-listed definition of "remove" or "removal", includes:

> such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as [the President] may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of this chapter.

42 U.S.C. § 9604(b).

CERCLA goes on to define "remedy" or "remedial action" in pertinent part as follows:

> The terms "remedy" or "remedial action" means [sic] those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment ... The term includes, but is not limited to, such actions at the location of the release as ... any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment....

42 U.S.C. § 9601(24).

Finally, as currently defined by CERCLA, "respond" or "response" mean "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

In *United States v. Northeastern Pharm. & Chem. Co.* ("NEPACCO"), 579 F.Supp. 823 (W.D.Mo.1984), *aff'd in part and rev'd in part on other grounds*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), the Court interpreted the government's response costs to include:

> (a) Investigations, monitoring and testing to identify the extent of danger to the public health or welfare or the environment.
>
> (b) Investigations, monitoring and testing to identify the extent of the release or threatened release of hazardous substances.
>
> (c) Planning and implementation of a response action.

> (d) Recovery of the costs associated with the above actions, and to enforce the provisions of CERCLA, including the costs incurred for the staffs of the EPA and the Department of Justice.

*Id.* at 850.

Federal courts have held that the United States is entitled to recover its investigative costs from parties liable under Section 107(a). *See State of N.Y. v. General Elec. Co.*, 592 F.Supp. 291, 298 (N.D.N.Y.1984) ("initial response costs ... are clearly authorized as costs of response under section 101(23), 42 U.S.C. § 9601(23)."); *United States v. Wade*, 577 F.Supp. 1326, 1333 n. 4 (E.D.Pa.1983) (cost of "investigating, monitoring, testing, and evaluating the situation at the Wade site ... is recoverable as a cost of removal."); *United States v. Conservation Chem. Co.*, 619 F.Supp. 162, 186 (W.D.Mo.1985).

Courts have also held Section 104(b) entitles the United States to recover its litigation costs from liable parties. *NEPACCO*, 579 F.Supp. at 851 ("the Court finds that under CERCLA, the defendants are jointly and severally liable for, and the plaintiff is entitled to recover, all litigation costs, including attorney fees, incurred by plaintiff."); *United States v. South Carolina Recycling & Disposal, Inc.* ("SCRDI"), 653 F.Supp. 984, 1009 (D.S.C.1984) (holding the United States can recover litigation expenses), *aff'd in part* and *vacated in part* in *United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *United States v. Conservation Chem. Co.*, 619 F.Supp. at 186 (following *NEPACCO*).

Courts have emphasized that liability extends to *ALL* response costs. *United States v. R.W. Meyer, Inc.*, 889 F.2d at 1504. These costs also include enforcement costs and administrative expenses. *SCRDI*, 653 F.Supp. at 1009. In addition, the United States has also been awarded indirect costs. *United States v. R.W. Meyer, Inc.* 889 F.2d 1497, 1501 (6th Cir.1989).

## IV. BURDEN OF PROOF ON RESPONSE COSTS

As stated above, pursuant to section 107(a)(4)(A) of CERCLA, defendants found

liable must pay "*all* costs of removal or remedial actions incurred by the United States Government ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A) (emphasis added). The National Contingency Plan ("N.C.P."), 40 C.F.R. Part 300–300.71, was promulgated pursuant to Section 9605 of CERCLA, 42 U.S.C. § 9605. The N.C.P. is the EPA regulation which establishes procedures for selection of response actions. "As long as the actions taken by the government were in harmony with the N.C.P., the costs incurred pursuant to those actions are presumed to be reasonable and therefore are recoverable." *NEPACCO*, 579 F.Supp. at 851.

Courts have determined that the defendants bear the burden of proving that the response costs sought by the United States are inconsistent with the N.C.P. *NEPACCO*, 810 F.2d at 747. In attempting to establish the United States' response actions are inconsistent with the N.C.P., the defendants must demonstrate that the agency's choices of response actions were arbitrary and capricious. *Id.* at 748; *United States v. Ward*, 618 F.Supp. 884, 900 (E.D.N.C.1985).

Where appropriate, courts have upheld summary judgment on response cost claims. *United States v. R.W. Meyer, Inc.* 889 F.2d 1497, 1505 (6th Cir.1989); *SCRDI*, 653 F.Supp. at 984.

## V. ANALYSIS AND RESOLUTION

A. *Response Costs, Excluding Department of Justice Indirect Costs*

■ The United States submitted extensive documentation in support of its claim

that the defendants owe $5,441,201.25 in EPA direct payroll and travel costs for both EPA headquarters and Regional VI staffs, DOJ's direct enforcement costs and vendor costs, and contract costs.[12] The documentation includes affidavits of various EPA and DOJ employees charged with accumulating the cost data. See, *e.g.*, Affidavits of Willimina Pipkin and Nellie Boone, United States' Brief at Exs. A & B. The affidavits are supported by summaries of cost data accumulated in connection with the Hardage site, and the source of the data. For instance, the payroll for EPA headquarters is kept based on time cards and time sheets which were coded into a computer program designed specifically for Hardage. See United States' Brief at Ex. A. For the contract costs, the United States also provided affidavits and cost summaries which refer to paid invoices, cancelled checks and letter reports of contractors to support the contract cost requests.[13] The Court has reviewed all of the documentation offered in support of the United States' response cost claim and finds that the United States has presented a prima facie case of its entitlement to response costs in the amount of $5,441,-201.25.

Once the United States presented this prima facie case, under Fed.R.Civ.P. 56 the burden then shifted to the defendants to show the United States' response costs were inconsistent with the N.C.P., or were not response or remedial costs incurred in connection with the Hardage site. *NEPACCO*, 810 F.2d at 747.

HSC attempted to create fact disputes concerning each category of United States'

---

12. The categories of costs included payroll and travel expenses for the EPA headquarters staff, payroll and travel expenses for the EPA Region VI staff, site sampling and inspection, installation of groundwater monitoring wells, preliminary assessment and site investigation, remedial investigation and feasibility study, sampling, aerial photography, evidence audits, DOJ litigation support, document production, and technical assistance. See affidavit of Willimina Pipkin, United States Brief at Ex. A.

13. Up until 1985, the EPA did not require the contractors to submit site-specific invoices. The contractors submitted letter reports. However, in further support of the contract cost figures prior to 1985, the United States submitted affidavits of the project managers at Hardage who detailed exactly what the job assignments were for the contractors, and that the project managers personally reviewed all of the progress reports by these contractors. See affidavits of Alan Tavenner and Barry Simmons, United States' Brief at Exs. D & F.

response costs. HSC asserted anywhere from three to seven reasons why liability for each cost category was disputed, giving a total of ten separate reasons. A legend of the alleged reasons and a grid sheet showing which of the ten reasons were asserted as to each cost category are attached to this Order as Appendices A & B. In support of its position, HSC attached the affidavits of Richard Bost and Thomas Matunas. HSC Response Brief at Exs. A & B. The affidavits of Bost and Matunas create no genuine issues of material fact relating to the award of response costs, other than the DOJ indirect costs. For the reasons set forth below the affidavits raise no genuine issues of material fact as to whether (a) United States' costs are inconsistent with the N.C.P., or (b) such costs constitute response or remedial costs incurred in conjunction with the Hardage site.

■ HSC first alleges the United States should be denied the right to recover certain cost categories because the costs were incurred during a period when HSC was excluded from knowledge or participation in response or remedial activities at Hardage.[14] In *United States v. Mottolo,* 695 F.Supp. 615 (D.N.H.1988), defendants raised a similar argument urging the United States should be barred from recovering any response costs. There the district court rejected the argument stating "the government has no affirmative duty to consult with private parties before undertaking response actions." *Id.* at 629. The Court finds as a matter of law the United States was under no duty to consult with these parties before undertaking response actions. Even if the facts alleged in HSC's

affidavits are true, this would not be a valid basis for denying cost recovery.

■ HSC next challenges certain cost categories, claiming certain tasks were unnecessary or improperly performed, the data was unacceptable or unusable, or the results were not useful to remediation of Hardage. HSC also argues that certain costs were incurred for tasks that did not contribute additional data at the site, did not advance the evaluation of remedial alternatives, nor yield information upon which EPA could make its response decisions. For those reasons, HSC claims the United States should be denied cost recovery. As stated earlier, the United States is entitled to recover *all* response costs at the Hardage site not inconsistent with the N.C.P. *United States v. R.W. Meyer, Inc.,* 889 F.2d at 1504. HSC has the burden of showing the challenged costs are inconsistent with the N.C.P., or were not incurred in connection with the Hardage site. To successfully establish that the United States' response actions are inconsistent with the N.C.P., HSC must demonstrate the United States' choice of response actions were arbitrary and capricious. *NEPACCO,* 810 F.2d at 748. HSC failed to produce any evidence in response to the summary judgment motion demonstrating the United States' actions were inconsistent with the N.C.P. Nor did the conclusionary affidavits filed by HSC adequately challenge the United States' assertions that the costs in question were incurred in connection with the Hardage site.[15] HSC's arguments regarding the efficiency or redundant efficacy of the United States' actions do not bar summary judgment.

---

**14.** USPCI makes this same argument but reasons it to be a showing that the government's response actions were capricious. USPCI's Response at 6–7. The Court rejects this contention for the reasons set forth in this paragraph.

**15.** USPCI argues the United States selected and pursued a remedy which is inconsistent with the N.C.P. USPCI's Response at 7–8. USPCI alleges the United States failed to conduct a remedial investigation as required by 40 C.F.R. 300.68(d). In addition, USPCI contends the United States failed to follow appropriate procedures in performing its feasibility study and selection of

remedy. USPCI presents no affidavits or evidentiary materials to support these arguments. USPCI merely argues that EPA's abandonment of the selected remedy supports an inference that the remedy is "both technically and procedurally flawed." USPCI's Response at 8. USPCI had the burden of presenting evidence to show these actions were inconsistent with the N.C.P. *Dart Indus. v. Plunkett Co. of Okla., Inc.,* 704 F.2d 496, 498 (10th Cir.1983); *see Lake Hefner Open Space Alliance v. Dole,* 871 F.2d 943, 945–46 (10th Cir.1989). It failed to do so.

HSC also attempts to create a fact dispute claiming certain contract costs may not represent the final, audited amounts the United States will actually incur with respect to the contract tasks performed.[16] The United States responds that it has agreed with HSC to refund any subsequent reimbursements from contractors, based on later audits or negotiations. See United States' Reply Brief at Ex. C, ¶ 5. The United States agrees the granting of any summary judgment on response costs should be subject to this agreement. For that reason, the Court finds HSC has failed to create a genuine fact dispute on this issue that might bar the granting of summary judgment, and that any order for recovery of response costs will direct refunds if appropriate.

HSC next opposes summary judgment by contending a fact dispute exists as to whether certain costs were incurred in compliance with federal procurement laws and regulations. HSC provides the Court no authority showing that this factor is to be considered in awarding response costs. Nor does HSC provide any evidence that there was any violation of federal procurement laws in connection with the Hardage site. It is not this Court's role to make an independent review of the United States' procurement processes at the Hardage site when awarding response costs. The Court's consideration is limited to whether the costs were in fact incurred in connection with the Hardage site, and whether the costs were inconsistent with the N.C.P. The Court finds this contention of HSC is without merit.

HSC urges a fact dispute is created and summary judgment is improper, because the United States failed to document that the purposes of some of these costs were for response activities at the Hardage site. The Court has reviewed the affidavits filed by the United States, and finds the United States has presented a prima facie case that the response costs were incurred at the Hardage site. Pursuant to Fed.R.Civ.P. 56 and the caselaw interpreting CERCLA response costs, the burden then shifted to the HSC to show the costs were not incurred at the Hardage site, and the costs were inconsistent with the N.C.P. HSC failed to produce any evidence to meet this burden. The affidavits supporting HSC's contention were merely conclusionary, raising no genuine issue of material fact within the meaning of Fed.R. Civ.P. 56. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1380 & n. 7 (10th Cir.1980). The Court thus finds that this contention is also without merit.

Finally, HSC argues a fact dispute is created because the United States failed to produce adequate documentation for HSC to determine what portion of these costs were Hardage site response activities. HSC continues to argue here, as it did in its motion to compel, that it has inadequate documentation due to the United States' failure to supply certain requested documents. The Court has reviewed the documentation provided by the United States in support of this motion for summary judgment. As earlier stated, the Court finds the United States has presented a prima facie case. There was an obligation on the part of HSC, if it intended to challenge these response costs, to take appropriate action to obtain the necessary evidence. It was also incumbent upon HSC to present the evidence in response to *this* motion for summary judgment. HSC failed to do that here.[17] The Court finds HSC failed to pro-

---

**16.** The United States clarified this issue in its reply brief by explaining that some EPA payments to certain contractors are "provisional" payments, subject to subsequent revision based on audits or subsequent negotiations between the contractor and EPA's contracting officer. United States' Reply Brief at 32.

**17.** On November 22, 1988 this Court entered an Order denying HSC's motion to compel the production of certain government cost documents. Order, No. CIV–86–1401–P (W.D.Okla. Nov. 22, 1989, docket no. 2261). The Order recognized that HSC had had notice that the United States was seeking reimbursement from the defendants for "all investigatory, enforcement, and other response costs." Complaint at ¶ 1 & C, No. CIV–86–1401–P (W.D.Okla. June 25, 1986). The Order further noted HSC waited until one month before the commencement of this trial to try to compel the United States to comply with HSC's production requests. HSC failed to file any Fed.R.Civ.P. 56(f) request. This Court's

duce any evidence to sustain its burden on this issue.

Lastly, both Stock Yards and HSC contend summary judgment on the United States' response cost claim is precluded because of the defendants' counterclaims and/or affirmative defenses which are still pending. Stock Yards' Response at 2–3; HSC's Response at 25. Stock Yards argues the response costs sought by the United States are included in the Stock Yards' counterclaim for contribution. Stock Yards' Response at 2. On November 22, 1989, this Court entered an Order dismissing the defendants' (including Stock Yards') third and fourth counterclaims for contribution and indemnity. Order Granting United States' Motion to Dismiss Third and Fourth Counterclaims for Contribution and Indemnity, No. CIV–86–1401–P (W.D. Okla. Nov. 22, 1989). Because Stock Yards' counterclaim for contribution is no longer pending, the Court finds the Stock Yards' contention to be without merit.

██ In considering HSC's contention concerning its affirmative defenses, the Court thoroughly reviewed the stipulation between the United States and the majority of the HSC defendants filed September 2, 1989. Stipulation for Entry of Judgment of Liability ("Stipulation"), No. CIV–86–1401–P (W.D.Okla. Sept. 2, 1988, docket no. 1428). The participating defendants stipulated as follows:

> The Participating Defendants reserve their right to assert all defenses and counterclaims that may be used to establish Plaintiff's liability. Such reservation of defenses does not include reserving the right to assert any defenses as affirmative defenses to avoid the liability stipulated herein.

Stipulation at 3, ¶ 2.

However, the participating defendants reserved certain rights in the Stipulation as follows:

> To contest the entitlement to any costs, including without limitation, the amount and types thereof, and damages or other

January 20, 1989 scheduling order specifically noted that agreed discovery extensions *would not be permitted* to adversely impact dispositive

monetary relief that may be recovered from the Participating Defendants, and to pursue an opportunity for mixed funding....

Stipulation at 3, ¶ 3a.

In response to HSC's argument that their affirmative defenses bar the entry of summary judgment, the United States contends that those defendants which have stipulated to section 107 liability in this case have waived any affirmative defenses they may have had to liability for the United States' response costs. United States' Reply Brief at 24.

It is clear from the Stipulation that HSC reserved the right to contest the United States' entitlement to these response costs. However, as reasoned above, the time for HSC to contest these costs was in response to *this* motion for summary judgment. Once the United States presented a prima facie case for its response costs claim, pursuant to Fed.R.Civ.P. 56, the burden shifted to HSC to present affidavits and documentation to substantiate HSC's affirmative defenses. HSC wholly failed to present such materials or evidence. HSC's Response Brief at 25–26. Accordingly, HSC's allegedly pending affirmative defenses do not bar the entry of this summary judgment.

As to the pending counterclaims, as stated above, the Court dismissed the defendants' counterclaims for contribution and indemnity on November 22, 1989. Order Granting United States' Motion to Dismiss Third and Fourth Counterclaims for Contribution and Indemnity, No. CIV–86–1401–P (W.D.Okla. Nov. 22, 1989). Accordingly, because these two counterclaims are no longer pending, they provide no basis for denying summary judgment.

██ Also, on November 22, 1989, the Court entered an Order denying the United States' motion to dismiss the defendants' fifth counterclaim for recoupment. Order Denying United States' Motion to Dismiss Fifth Counterclaim for Recoupment, No.

motions. Order at 8, No. CIV–86–1401–P (W.D. Okla. Jan. 20, 1989).

CIV–86–1401–P (W.D.Okla. Nov. 22, 1989). However, the Order expressed this Court's concern regarding the "alleged nexus or common denominator between the relief sought by the government and the precise nature of the defendants' recoupment claim." *Id.* at 3. Despite the continued viability of HSC's recoupment counterclaim, to successfully defeat summary judgment for the United States' response cost presented herein, HSC had the burden under Fed.R.Civ.P. 56 to present evidentiary materials to prove the existence of fact disputes relating to the recoupment counterclaim. HSC's brief provides neither a citation to evidentiary affidavits nor other materials required to meet this burden. HSC's Response Brief at 25–26. Accordingly, HSC's pending recoupment counterclaim does not bar the entry of this summary judgment.

For the above reasons, the Court finds the United States presented a prima facie case for partial summary judgment on the response costs incurred by the United States in connection with the Hardage site in the amount of $5,441,201.25. The burden then shifted to the defendants to show these costs were inconsistent with the N.C.P., *NEPACCO*, 810 F.2d at 747, or to prove the costs were not incurred at the Hardage site. As shown above, the defendants totally failed to meet this burden. Accordingly, the United States' motion for partial summary judgment should be GRANTED on the response costs incurred by the United States in connection with the Hardage site in the amount of $5,441,-201.25.

B. *Department of Justice's Indirect Costs*

The United States also seeks an award of response costs for the DOJ's indirect costs in the amount of $850,864.00. These indirect costs are costs which are generally necessary to support the functioning of DOJ Land and Natural Resources Division professional personnel in their case work, but which are not allocated directly to specific cases. Those costs include the cost of office space, utilities, and supplies. United States' Brief at 20. In addition, the indirect costs also include indirect labor costs (for example, attorney and paralegal administrative time, secretarial support, accounting support, record keeping and time keeping), compensated absences (for example, vacation, holiday, and sick time), fringe benefits, and training. United States' Brief at Ex. K, p. 3. In support of this cost request the United States attached the affidavit of C.P.A. Patrick McGeehin, which describes the methodology used to allocate these indirect costs to the Hardage site. United States' Brief at Ex. K, p. 3; Brief at 20–21.

HSC's response concerning DOJ's indirect costs is supported by the affidavit of Thomas Matunas. HSC's Response Brief at Ex. A. The response raises four points. Matunas asserts that approximately $149,000.00 of DOJ's indirect costs are Standard Level Users Charges (SLUC). Matunas argues these SLUC charges include rent paid by DOJ on government-owned buildings and an internal "phantom profit" amount for the General Services Administration ("GSA"). Matunas concludes it is unreasonable to charge the HSC for such "phantom rental" charges.

In response to the SLUC assertion, the United States attaches the affidavit of Manfred Van der Walde. See affidavit of Van der Walde, United States' Reply. Van der Walde's affidavit indicates that Congress has authorized GSA to finance the property management activities for government agencies, including DOJ. The agencies then pay the GSA for these activities which include rent, heat and other utilities, cleaning, and maintenance. The United States argues these are actual costs to DOJ. The Court agrees. The Court finds that as to the SLUC charges, HSC has failed to create a genuine issue of material fact concerning the United States' right to these costs.

HSC next argues DOJ's indirect costs violate interagency agreements between DOJ and the EPA. Matunas contends the interagency agreements between DOJ and EPA provide only for recovery of direct charges. Matunas asserts $329,-

000.00 of the 1987 indirect costs for DOJ were allocated to the Hardage site in violation of these agreements, and such costs are not reimbursable. The United States responds these interagency agreements are irrelevant. Further, the United States argues as long as these indirect costs were, in fact, incurred, they should be reimbursed. The Court finds these indirect costs were, in fact, costs to the DOJ. The interagency agreements only determine whose budget, whether EPA or DOJ, initially absorbs the costs. The agreements in no way affect the right of the United States to obtain reimbursement for these response costs. The Court finds HSC has also failed to create a genuine issue of material fact concerning these interagency agreements.

HSC next contends, through Matunas' affidavit, DOJ's indirect costs of $850,864.00 for 1987 and 1988 include indirect labor costs at a ratio of 1 to 1 to direct labor costs. Matunas asserts the Hardage site has been assessed almost twice the hourly rate of DOJ employees when they work at the Hardage site. Matunas argues this results in an allocation to the Hardage site of $370,000.00 in indirect labor costs for activities that have no direct benefit to the Hardage site. Matunas states in his expert opinion, this high proportion of non-productive labor costs is excessive, and indicates charges are being made to the Hardage site for work unrelated to the Hardage site. HSC Brief at Ex. A, p. 9. Matunas further points out, in documents attached to his affidavit, that over time, the United States' witness McGeehin has changed the factor for additional superfund overhead rate from 48.02% to 5% for the same time period. HSC argues that McGeehin, in his affidavit supporting summary judgment for response costs, makes no mention of this additional superfund overhead, although he includes it in the indirect costs allocated to the Hardage site. HSC Brief at Ex. A, p. 9.

The United States responds by stating McGeehin's affidavit makes clear this additional superfund overhead rate represents " 'non-case specific charges related only to

Superfund cases' (i.e., charges which are not assigned to individual cases, but which do relate only to Superfund cases, rather than to all cases in the Lands Division)." United States' Reply Brief at 22. The United States' only response to the "excessive" statements of Matunas is to say these statements are conclusionary.

Finally, HSC points out from a legal standpoint that the cases are divided on the issue of indirect costs. Relying on *United States v. Ottati & Goss*, 694 F.Supp. 977 (D.N.H.1988), HSC urges the Court to deny the United States' request for DOJ's indirect costs.

The Court has thoroughly reviewed the few cases which have considered the indirect cost issue and finds the cases allowing recovery of indirect costs to be persuasive. In *United States v. Ottati & Goss*, 694 F.Supp. 977, the court denied EPA's recovery of indirect costs for rent, utilities, supplies, clerical support, and other overhead expenses. There, the court determined that indirect costs included expenses necessary to operate the Superfund program generally, and could not be attributed directly to a particular site. For that reason, the court awarded no indirect costs to the United States. However, because the *Ottati & Goss* court offered no additional explanation for its decision, the Court finds the case to be of limited value. In contrast, the Sixth Circuit recently addressed the indirect cost issue, allowing the United States to recover indirect costs. *United States v. R.W. Meyer, Inc.*, 889 F.2d at 1503. The Sixth Circuit held that indirect costs *are* attributable to response efforts, because they represent a portion of overhead expenses needed to support the government's direct response activities. *Id.* at 1503.

The Court concurs with the reasoning of *Meyer*, and finds that the United States' indirect costs associated with the Hardage site may be recovered as response costs under Section 107(a)(4)(A). However, on the basis of the current record before the Court on the motion for partial summary judgment, the Court cannot determine whether the United States' requested DOJ

indirect costs, particularly in the area of indirect labor costs, should be awarded. As with the direct costs, the United States has presented documentation establishing a prima facie case for an award of DOJ's indirect costs in the amount of $850,864.00. In response to this, HSC filed Matunas' affidavit attempting to contest the validity of the United States' indirect cost allocation. Matunas questions the excessiveness of the indirect labor costs attributed to the Hardage site demonstrated by the ratio of direct to indirect labor costs. In Matunas' expert opinion, this ratio shows an improperly high amount of indirect costs have been allocated to the Hardage site which should not be recoverable from the defendants including HSC. While the Court views this as a close case, the factual objections based on Matunas' expert opinion raise a genuine issue of material fact which precludes the granting of summary judgment on this issue. Accordingly, the United States' motion for partial summary judgment on DOJ's indirect costs in the amount of $850,864.00 should be DENIED.

## VI. DECLARATORY JUDGMENT FOR FUTURE RESPONSE COSTS

 The United States seeks a declaratory judgment of the liability of these defendants for future response costs associated with the Hardage site. HSC responds, at present, the amount of the costs is purely speculative. HSC then asserts, without authority, that declaratory, summary judgment is not an appropriate vehicle for deciding unliquidated, future claims. In *NEPACCO*, 579 F.Supp. at 852, the District Court of Missouri held that although the court could not award costs until they are incurred, the court can presently determine liability for future costs.

Accordingly, the United States' motion for a declaratory judgment for liability for future response costs associated with the Hardage site except the DOJ indirect costs shall also be GRANTED.

## VII. CONCLUSION

For the reasons stated above, the United States motion for partial summary judg-

ment for response costs in connection with the Hardage site in the amount of $5,441,-201.25 is GRANTED as to all defendants who have already stipulated to liability or have been found liable. Should other defendants later be found liable, they also would be jointly and severally liable for these same response costs. Should later final, audited figures for contract work at the Hardage site result in a reduction of the figures in this Order, the United States is ordered to refund such amounts. The United States' motion for summary judgment for DOJ's indirect costs in the amount of $850,864.00 is DENIED.

The United States' motion for declaratory judgment for liability for future response costs is also GRANTED except for DOJ's indirect costs.

IT IS SO ORDERED.

## APPENDIX A

### LEGEND OF HSC OBJECTIONS TO UNITED STATES' RESPONSE COSTS

Hardage asserted liability for each cost category was disputed for the following reasons:

1. The government incurred some of these costs for tasks performed in a time period during which it excluded HSC defendants from knowledge of and/or participation in activities at the site. (HSC excluded)

2. The government incurred some of these costs for tasks performed which, because they were unnecessary or improperly performed, produced data which was unacceptable or unusable, or results which were not useful to remediation of the Hardage site. (unnecessary)

3. The government incurred some of these costs for tasks performed which neither contributed additional data regarding site conditions, advanced the evaluation of remedial alternatives, nor yielded information upon which EPA has made or could make its response decisions. (didn't contribute)

4. The government has failed to document that the purposes for which some of these costs were incurred were response

activities at the Hardage site. (failed to document at Hardage)

5. The government has failed to produce adequate documentation to enable HSC defendants to determine what portion of these costs were for response activities at the Hardage site. (not enough documentation)

6. The government has failed to document that these costs represent the final, audited amounts it actually will incur with respect to the tasks performed. (not final figures)

7. The government incurred some of these costs in a manner which is not in compliance with its contracting requirements and/or applicable laws and regulations. (not in compliance)

8. A portion of the amount claimed includes items which result in no actual cost to the government. (not actual cost to U.S.)

9. The amount claimed includes costs which are not in accordance with EPA/DOJ interagency agreements. (violate interagency agreements)

10. The amount claimed includes costs for work and expenses which neither were caused by nor benefit response activities at the Hardage site. (no benefit to Hardage)

APPENDIX B

United States'
Undisputed
Facts:

HSC Objections:

| | HSC Excluded | Unnecessary | Didn't Contribute | Failed To doc at Hardage | Failed To Produce | Not Final Figures | Not In Compliance | No Cost To U.S. | Violate Interagency Agreements | No Benefit |
|---|---|---|---|---|---|---|---|---|---|---|
| 6-7 EPA Payroll 49,795.81 | + | + | + | + | + | | | | | |
| 8 EPA Headquarters Travel 9,273.71 | + | + | + | | | | | | | |
| 9-10 EPA Region VI Payroll $288,160.95 | + | + | + | + | + | | | | | |
| 11 EPA Region VI Private Vendor Exp. $4,158.65 | | + | + | | | | | | | |
| 12-13 EPA Region VI Travel $38,928.24 | + | + | + | | | | | | | |
| 14-15 CH2M Hill $846,956.80 | + | + | + | + | + | + | + | | | |

APPENDIX B—Continued

United States' Undisputed Facts:

HSC Objections:

| | HSC Excluded | Unnecessary | Didn't Contribute | Failed To doc at Hardage | Failed To Produce | Not Final Figures | Not In Compliance | No Cost To U.S. | Violate Interagency Agreements | No Benefit |
|---|---|---|---|---|---|---|---|---|---|---|
| 16-17 CH2M Hill 68-01-7251 $1,326,308.25 | + | + | + | + | + | + | + | | | |
| 18-19 Techlaw 68-01-6838 $18,955.38 | + | + | + | + | + | + | + | | | |
| 20-21 Techlaw 68-01-7104 $105,552.38 | | + | + | + | + | + | + | | | |
| 22-23 Techlaw 68-01-7369 $162,458.57 | | + | + | + | + | + | + | | | |
| 24-25 Jacobs $313,554 | | + | + | + | + | + | + | | | |
| 26-27 Viar $433,425.87 | + | + | + | + | + | + | + | | | |
| 28-29 DOJ Direct Labor $405.035 | | + | + | + | + | | | | | |

APPENDIX B—Continued

| United States' Undisputed Facts: | HSC Objections: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | HSC Excluded | Unnecessary | Didn't Contribute | Failed To doc at Hardage | Failed To Produce | Not Final Figures | Not In Compliance | No Cost To U.S. | Violate Interagency Agreements | No Benefit |
| 30-31 DOJ Indirect $850,864 | | + | + | | | | | + | + | + |
| 32-33 DOJ other direct $1,438,638 | | + | + | + | + | + | + | | | |