Ernest L. JORDAN, et al., Plaintiffs,

v.

SOUTHERN WOOD PIEDMONT COMPANY, ITT Rayonier, Inc., ITT Corporation, and The Dow Chemical Co., Defendants.

R.J. FOREMAN, Sr., et al., Plaintiffs,

v.

SOUTHERN WOOD PIEDMONT COMPANY, ITT Rayonier, Inc., ITT Corporation, and The Dow Chemical Co., Defendants.

Civ. A. Nos. CV191–108, CV191–063.

United States District Court,
S.D. Georgia,
Augusta Division.

July 14, 1992.

Harry Blackshear James, III, William Robert McCracken, Augusta, Ga., for plaintiffs.

Benjamin L. Weinberg, Jr., David A. Sapp, Charles Kyle Reed, Long, Weinberg, Ansley & Wheeler, Nolan C. Leake, Eugene G. Partain, King & Spalding, Jay Frank Castle, Lord, Bissell & Brook, Atlanta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Defendant Dow Chemical Co. ("Dow") moves the Court for summary judgment in CV191–108 and CV191–063.[1] This Order resolves Dow's Motions for Summary Judgment in both CV191–108 and CV191–063 because the issues in these cases are grounded in a common set of circumstances. Jurisdiction is predicated on 28 U.S.C. § 1331 in CV191–108 and on 28 U.S.C. § 1332 in CV191–063.

## I. BACKGROUND

The Plaintiffs in both cases[2] own real estate in the immediate vicinity of an Augusta, Georgia, wood treatment plant owned and operated by ITT Rayonier, ITT Corporation and Southern Wood Piedmont (collectively "SWP"). In its wood treatment operation, SWP used a form of pentachlorophenol sold by Dow under the trade name "DOWICIDE" ("penta").[3]

Plaintiffs' claims arise from an alleged release of penta from the SWP Augusta facility. Pointing to the alleged resultant contamination of their lands, the *Jordan*–Plaintiffs assert a claim under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675, ("CERCLA") as well as state common law negligence, trespass, nuisance and conspiracy claims. Similarly, the *Foreman*–Plaintiffs assert state common law ultrahazardous activity, strict liability, negligence, trespass, nuisance and conspiracy claims.

Dow moves for summary judgment on the *Jordan*–Plaintiffs' CERCLA claims upon grounds that it is not within CERCLA's defined class of potentially liable parties and, alternatively, that it falls within a CERCLA provision excluding from liability certain parties dealing with pesticides registered under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 ("FIFRA"). As to the remaining claims, Dow's motions for summary judgment first interprets them as asserting that Dow mislabeled its chemicals and, then, arguing that any such claims are preempted by FIFRA. Also, Dow's motions assert that Plaintiffs' state law claims are time barred and that the *Foreman*–Plaintiffs' strict lia-

---

1. On October 1, 1991, the Court conducted a hearing on Dow's motions to dismiss in CV191–108 and CV191–063. By Order entered October 30, 1991, Dow's motions to dismiss were converted to motions for summary judgment because Defendants submitted matters beyond the pleadings. *See* Fed.R.Civ.P. 12(b). Additionally, Plaintiffs were permitted to proceed with limited discovery until January 29, 1992, as to certain issues relevant to these motions.

2. The Plaintiffs in both cases will be referred to collectively as "Plaintiffs," but when necessary they will be differentiated by referring to them as either *"Jordan*–Plaintiffs," CV191–108, or *"Foreman*–Plaintiffs," CV191–063.

3. Penta is a chemical designed to kill destructive microorganisms and insects and is used in the treatment and preservation of wood. "DOWICIDE" is a pesticide registered under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq.

bility claim is barred by Ga. Code Ann. § 9-3-30 (Michie 1982). After due consideration, this Court concludes that Dow is not liable under CERCLA and that Plaintiffs state law claims are without merit. Consequently, Dow's timeliness arguments are moot.

## II. SUMMARY JUDGMENT

■■■ The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368 (11th Cir.1982). The party moving for summary judgment may meet this burden upon showing that the adverse party has failed to make a showing sufficient to establish the existence of an element essential to the adverse party's case, and on which the adverse party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If any factual issue is unresolved by the motion for summary judgment, then the Court may not decide that matter. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). The Court must resolve all reasonable doubts in favor of the adverse party. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). When, however, the moving party's motion for summary judgment pierces the pleadings, the burden then shifts to the adverse party to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party cannot carry this burden by reliance on the pleadings, or by repetition of conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033 (11th Cir.1981). Rather, the adverse party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56.

In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.1985), the clerk has given the adverse party notice of the summary judgment motion, the right to file affidavits or other materials in opposition to the motion, and of the consequences of default. Thus, the notice requirement of *Griffith* is satisfied.

## III. DISCUSSION

### A. CERCLA Claim

■■■ CERCLA was enacted in 1980 [4] as a comprehensive plan to handle the nation's hazardous waste problems and "to force those responsible for creating hazardous waste problems to bear the cost of their actions." *United States v. Bliss*, 667 F.Supp. 1298, 1304 (E.D.Mo.1987), citing *Violet v. Picillo*, 648 F.Supp. 1283, 1288 (D.R.I.1986). *See also Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990) ("*Florida Power*"); *U.S. v. Aceto Agric. Chem's. Corp.*, 872 F.2d 1373 (8th Cir.1989). As interpreted by most courts, CERCLA imposes strict, joint and several liability [5] and allows only a few causation-based defenses.[6] *Aceto*, 872 at 1377-78; *see also, Bliss*, 667 F.Supp. at 1304. For a private plaintiff to establish a prima facia CERCLA case for the recovery of response costs of waste cleanup, he must show:

(1) that the defendant is within one of four statutory categories of "covered persons" liable for such costs;

---

**4.** *See* H.R.Rep. No. 1016, 96th Cong., 2d Sess. pt. 1, at 17-22 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6119-25. This act was amended in 1986 by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, § 1, 100 Stat. 1613 (1986).

**5.** *See, e.g., United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 732 n. 3 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *New York v.*

*Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir.1985); *United States v. Chem-Dyne Corp.*, 572 F.Supp. 802, 808-10 (S.D.Ohio 1983).

**6.** *See* 42 U.S.C. § 9607(b); *United States v. Hooker Chem's & Plastics Corp.*, 680 F.Supp. 546, 549 (W.D.N.Y.1988); *Bliss*, 667 F.Supp. at 1304; *United States v. Ward*, 618 F.Supp. 884, 893 (E.D.N.C.1985).

(2) that there has been a release or there is a *threat* of release of a hazardous substance from a facility;

(3) which has caused plaintiff to incur clean-up and response costs;

(4) that the costs expended were necessary;

*and*

(5) that the responsive actions taken and the costs incurred were consistent with the National Contingency Plan.

*Prudential Ins. Co. of Am. v. U.S. Gypsum,* 711 F.Supp. 1244, 1251 (D.N.J.1989), *citing, Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1278 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir.1988).

In applying CERCLA here, two issues arise: (1) whether Dow is a "covered person" under 42 U.S.C. § 9607(a) ("§ 9607(a)") and (2) whether the CERCLA liability exclusion for FIFRA registered pesticides applies to penta under the circumstances of this case.

### 1. The CERCLA § 9607(a) "Covered Person"

■ Count V of the *Jordan* –Plaintiffs' Complaint alleges that Dow arranged for the disposal of penta and is therefore a "covered person" liable under CERCLA. Dow responds by arguing that its role was strictly limited to that of a vendor of chemicals and that it had no hand in disposing of penta at the Augusta site.[7] Those parties considered to be a "covered person" liable under § 9607(a) include:

(3) *any person who* by contract, agreement, or *otherwise arranged for disposal* or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, ... *shall be liable* for [cleanup costs or damages re-

sulting from injury to, destruction of, or loss of natural resources].

42 U.S.C. § 9607(a)(3) (emphasis supplied). The critical point here is whether, either through its sale of penta to SWP or by virtue of other contacts with SWP, Dow "otherwise arranged for disposal" of that chemical.

Under similar circumstances, the Eleventh Circuit Court of Appeals refused to establish a per se rule excluding chemical suppliers from CERCLA liability and explained that a determination as to whether a supplier "otherwise arranged for disposal" must be made on a case by case basis. *Florida Power,* 893 F.2d at 1317. *Florida Power* also noted, however, that "[i]f a party merely sells a product, without additional evidence that the transaction includes an 'arrangement' for the ultimate disposal of a hazardous substance, CERCLA liability would not be imposed." *Id.* Finally, "... a liberal judicial interpretation of the term [arranged] is required in order that we achieve CERCLA's 'overwhelmingly remedial' statutory scheme." *Id., citing United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 733 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

In support of their allegation that Dow arranged for the disposal of penta at the Augusta SWP site, the *Jordan* –Plaintiffs point to Dow's sale of penta to SWP and (1) a Material Safety Data Sheet ("MSDS"), (2) Dow technical bulletins and communications inviting inquiries from anyone experiencing chemical problems with which Dow has expertise, and (3) several tests and surveys allegedly conducted by Dow with SWP assistance. Whether considered individually or collectively, the Dow activities offered by Plaintiffs do not support a finding that Dow is a "covered person."

Plaintiffs assert that Dow's MSDS demonstrates that Dow was arranging for the disposal of penta because it describes a disposal method for penta.[8] This argu-

---

**7.** The evidence is undisputed that Dow sold only one shipment of penta to the SWP Augusta facility. While the *Jordan* –Plaintiffs vigorously assert that additional shipments were sold, they have been unable to provide evidence to support their claims.

**8.** In a space on the form labeled "disposal method," Dow's MSDS states that "[i]f local regula-

ment, however, fails to recognize that the MSDS is distributed to comply with regulations promulgated by the Occupational Safety and Health Administration ("OSHA"), *see* 29 C.F.R. § 1910.1200, and, significantly, that the disposal method noted is found in section 6 of Dow's MSDS under the heading "SPILL OR LEAK PROCEDURES"—procedures that 29 C.F.R. § 1900.1200(g)(2)(viii) require be included.[9] Adoption of Plaintiffs characterization of the MSDS would render liable every manufacturer who chose to comply with the OSHA MSDS regulations—such a reading of § 9607(a) is too broad. Thus, the disposal methods described in Dow's MSDS do not demonstrate that Dow was arranging for the disposal of penta because it is provided to purchasers such as SWP in compliance with the regulations set forth above. Moreover, the imposition of liability upon a manufacturer on account of its dissemination of safety-related information is anathematic, even to the broad and salutary remedial purposes of CERCLA.

Plaintiffs also assert that certain of Dow's technical bulletins and communications tie Dow to the disposal of penta because those documents note Dow's expertise in handling chemicals and invite inquiries regarding chemical handling. The following were quoted by Plaintiffs:

(1) The Dow Chemical Co. has had extensive experience with the problems involved in handling chlorinated aeromatics. We invite inquiries.

(2) Dow encourages its customers to review their applications of Dow products from the standpoint of human health and environmental quality. To help insure that Dow products are not used in ways for which they are not intended or tested, Dow personnel will assist customers in dealing with ecological and safety considerations. Your Dow salesman can arrange the proper contacts.

Dow responded to this argument by pointing out that SWP never contacted it for advice, and Dow never gave SWP advice concerning chemical disposal. Also, Dow asserts that even if contacted it would simply have "provided the customer with the list of EPA-approved disposal facilities in their region."

Plaintiffs' arguments concerning Dow's technical bulletins and communications are unpersuasive. In addition to the fact that Plaintiffs cannot provide any instances where advice was actually given, the context of these Dow statements demonstrate that in making them Dow sought to ensure that chemicals it manufactured were properly handled and not that it was attempting to arrange for or control their disposal. Adoption of Plaintiffs' arguments, without concrete evidence establishing those bulletins as an attempt by Dow to arrange for the disposal of chemicals, would discourage chemical manufacturers from offering expertise to those experiencing problems and thereby increase the risk of future hazardous waste incidents. Such a result is decidedly contrary to the intent of CERCLA.

The tests and surveys allegedly conducted by Dow with SWP assistance are the final piece of evidence set forth by Plaintiffs in their attempt to show that Dow arranged for the disposal of penta. In making this argument, however, Plaintiffs do nothing more than make a conclusory statement that Dow and SWP were engaged in those activities and that by doing so Dow was arranging for the disposal of penta. Although it is conceivable that circumstances could be such that a survey and test arrangement could include activities qualifying under CERCLA as "arranging for disposal," Plaintiffs have presented no such evidence in this case.

Dow's sale of penta to SWP, even when considered collectively with the MSDS re-

---

tions permit burning, incinerate at 1000 [degrees celsius]. Otherwise, keep material in closed containers and call supplier for advice."

**9.** Under 29 C.F.R. § 1910.1200, chemical manufacturers are required to develop or obtain and employers are required to possess an MSDS for their hazardous materials. The regulations also

mandate that the MSDS contain "[a]ny generally applicable precautions for safe handling and use which are known to the chemical manufacturer, ... including hygienic practices, ... and procedures for clean-up of spills and leaks." 29 C.F.R. § 1910.1200(g)(2)(viii).

port, Dow technical bulletins and communications, and tests and surveys, are not enough to bring Dow under CERCLA as a "covered person." This conclusion is supported by noting that Dow's involvement with SWP concerning penta disposal at the Augusta facility is certainly less extensive than that presented in *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651 (N.D.Ill.1988), *aff'd,* 861 F.2d 155 (7th Cir.), *reh. denied* (7th Cir.1988).

In *Edward Hines,* the defendant chemical supplier was found to have incurred no CERCLA liability despite its extensive relationship with the lumber treatment facility involved. The *Edward Hines* defendant sold chemicals to the lumber treatment facility, advised and consulted them concerning the design and location of treatment systems, trained facility employees, and provided technical assistance. By agreement of the parties, the purchaser exercised sole responsibility and control of the facility. In contrast to *Edward Hines,* the evidence presented here shows that Dow merely sold penta to SWP in the ordinary course of business. There is nothing to suggest that Dow has attempted to couch this transaction in terms of a "sale" in order to effect a collusive disposal of an unwanted hazardous waste as have defendants in other cases.[10] Thus, Dow is not a "covered person" as contemplated under § 9607(a).[11]

**2. CERCLA Pesticide Exclusion:
42 U.S.C. § 9607(i)**

■ In response to Plaintiffs' claims, Dow argues that the pesticides exclusion in 42 U.S.C. § 9607(i) ("§ 9607(i)") applies so as to preclude CERCLA liability because penta is a FIFRA registered pesticide.[12] Section 9607(i) provides in relevant part that:

No person ... may recover under the authority of this section for any response costs or damages resulting from the *application* of a pesticide product registered under the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C. § 136].

42 U.S.C. § 9607(i) (emphasis supplied). Under Dow's interpretation of this provision, pesticides are excluded from CERCLA coverage under all circumstances such that it is a complete defense to a CERCLA claim that the chemicals involved are FIFRA registered pesticides. This interpretation, however, exaggerates the scope of § 9607(i).

In *United States v. Hardage,* 733 F.Supp. 1424 (W.D.Okla.1989),[13] an Oklahoma District Court directly addressed the scope of § 9607(i) and demonstrated that the intent of CERCLA's pesticide exclusion is to prevent the typical pesticide user from incurring CERCLA liability when he has done nothing more than purchased and applied a pesticide in the customary manner.[14]

---

**10.** *See, e.g., United States v. A & F Materials Co., Inc.,* 582 F.Supp. 842 (S.D.Ill.1984) (corporation found liable under CERCLA when "sale" found to be motivated by seller's desire to dispose of materials); *New York v. General Elec. Co.,* 592 F.Supp. 291 (N.D.N.Y.1984) ("sale" of used transformer oil found to be disposal so as to render seller liable under CERCLA).

**11.** For additional cases in which courts have reached similar conclusions *see Prudential Ins. Co. of Am. v. U.S. Gypsum,* 711 F.Supp. 1244 (D.N.J.1989) (transaction involving the transfer of an asbestos-containing product to be used in building construction found to be a sale such that no CERCLA liability attached); *United States v. Westinghouse Elec. Corp.,* 22 Env't Rep. Cas (BNA) 1230 (S.D.Ind.1983) (the fact that transaction was not motivated by desire of seller to dispose of its own wastes was noted as significant factor in finding that a chemical manufacturer incurred no CERCLA liability

when it sold chemicals to a customer for use in customer's manufacturing process).

**12.** As noted earlier, penta is a pesticide product used to kill microorganisms and insects in wood products.

**13.** The *Hardage* court rejected a stock yard company's argument that 42 U.S.C. § 9607(i) afforded a defense to liability for the disposal of FIFRA registered dipping vat pesticide waste.

**14.** *Accord United States v. Morrison–Quirk Grain Corp.,* 1990 WL 482139, 1990 U.S. Dist. LEXIS 18921 (D.Nebr. May 4, 1990). Although the *Morrison–Quirk* court's opinion does not discuss its reasoning at length, the court's analysis and grant of summary judgment in favor of the plaintiff and rejecting the defendant grain elevator owner's defense that the chemical involved was a pesticide supports a narrow reading of the CERCLA pesticide exclusion.

*Hardage* addresses the scope of § 9607(i) by first examining the meaning of the section in context with the remainder of 42 U.S.C. § 9607 and then by turning to its legislative history.

In examining 42 U.S.C. § 9607 in its entirety, the *Hardage* court placed particular emphasis on the drafters' use of the word "application" in § 9607(i) as opposed to the broader term "disposal" found in § 9607(a), the "covered person" subsection. After comparing the dictionary definitions of these two words and noting that CERCLA does not define "application," the court explained that when it adopted the § 9607(i) exclusion, Congress is presumed to have been aware of the FIFRA implementing regulations which define "application of a pesticide" as ". . . the placement of a pesticide at or on the site where the pest control or other response is desired," 40 .C.F.R. 162.3(j). Consequently, *Hardage* applied the FIFRA regulation definition of "application of a pesticide" to § 9607(i).

Turning to CERCLA's legislative history, *Hardage* notes a strong relationship between the § 9607(i) exclusion and the liability concerns of farmers. In doing so, *Hardage* provides a detailed analysis that includes a review of the exclusion's evolution, a committee report from the Senate Committee on the Environment and Public Works, and other sources. After noting that the defendants had not provided legislative history in contradiction to that reviewed, the court concluded that the § 9607(i) exclusion is a narrow one.

Like the *Hardage* defendants, Dow has provided no case law or legislative history to support its broad interpretation of § 9607(i). However, further consideration of Dow's alleged § 9607(i) FIFRA pesticide liability exclusion is unnecessary. This issue is pretermitted by my decision that Dow is not a "covered person" under CERCLA.

### B. Plaintiffs' State Common Law Claims

■■■■ The *Foreman* –Plaintiffs assert Georgia common law negligence, trespass, nuisance, and conspiracy claims against Dow while the *Jordan* –Plaintiffs make those same claims plus an ultrahazardous activity strict liability claim. Plaintiffs' claims, however, do not survive summary judgment scrutiny.

At the heart of each of Plaintiffs' claims against Dow is the allegation that chemicals at the SWP Augusta facility were improperly handled and disposed of. In response, Dow explains that it was involved with the SWP Augusta facility solely as a vendor of chemicals. Dow then goes on to argue that because its role was such a limited one and Plaintiffs' common law claims all relate to the handling and disposal of chemicals, Plaintiffs' claims against Dow make sense only if interpreted as alleging that Dow improperly labeled its chemicals.[15] Finally, Dow cites *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir.1991), *petition for cert. filed*, —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892, in support of its position that FIFRA preempts Plaintiffs' improper labeling claims.

Whether read broadly as asserting Dow liability based on involvement in the handling and disposal of chemicals or narrowly as asserting improper labeling claims, Plaintiffs' claims fail. When read broadly, Plaintiffs' claims fail because, as the CERCLA "covered person" discussion concerning the extent of Dow's involvement at the Augusta SWP facility suggests and the remaining evidence demonstrates, Dow's involvement with the Augusta SWP facility is not enough to associate it with SWP's handling and disposal activities so as to render it liable under Plaintiffs' state common law claims.

If construed narrowly as asserting that Dow improperly labeled its chemicals, Plaintiffs' state common law tort claims must fail because any such claims are

---

**15.** In essence, Dow is arguing that the only way to make sense of Plaintiffs' common law claims in light of Dow's limited involvement is to construe them as claims that, by improperly label-ing its chemicals, Dow caused Southern Wood Paper Company and ITT Rayonier to mishandle and improperly dispose of Dow products.

preempted by FIFRA's provisions.[16] The Eleventh Circuit Court of Appeals, in *Papas*, directly addressed this preemption issue and held that "... the federal government has occupied the entire field of labeling regulation, leaving no room for the states to supplement federal law, even by means of state common law tort actions." *Papas*, 926 F.2d at 1025. As explained by the court, "[a]llowing state common law tort actions based on labeling claims would permit state court juries to do what state legislatures and state administrative agencies are forbidden to do: impose requirements for labeling pesticides." *Id.* at 1026. In light of *Papas*, it is clear that under the law of this circuit Plaintiffs' claims are preempted if construed as alleging that Dow improperly labeled its chemicals.

Plaintiffs argue that *Papas* is no longer valid in light of the United States Supreme Court's holding in *Wisconsin Pub. Intervenor v. Mortier*, — U.S. —, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), that FIFRA does not preempt municipal regulation of pesticide use. Admittedly, *Mortier* establishes that FIFRA does not completely preempt all fields related to pesticides, but it does not affect the Eleventh Circuit's decision in *Papas*. Although the *Mortier* Court primarily focused its attention on 7 U.S.C. § 136v(a),[17] it did recognize that FIFRA provides narrow preemptive coverage of certain areas—including labeling. *Mortier*, — U.S. at —, 111 S.Ct. at 2478–79. Thus, the *Mortier* decision recognizes the very preemptive coverage of labeling issues found in *Papas*.

## IV. CONCLUSION

Plaintiffs' claims against Dow chemical do not survive summary judgment scrutiny. With respect to the CERCLA claim, although Dow may not be relieved of CERCLA liability by the § 9607(i) FIFRA pesticide exclusion, Dow is not a "covered person" within the delineated group potentially liable under that act. Similarly, Plaintiffs' state law claims are meritless because they have not provided sufficient facts to tie Dow to the activities upon which those claims are based. Alternatively, if interpreted as asserting that Dow mislabeled its chemicals, Plaintiffs' state law claims are preempted by FIFRA's labeling provisions.

Accordingly, Dow's Motions for Summary Judgment in CV191–108 and CV191–063 are hereby GRANTED. The Clerk is directed to enter final judgment in favor of Dow in CV191–108 and CV191–063. Dow's costs shall be taxed against the Plaintiffs in each of the cases.

ORDER ENTERED.

16. FIFRA and the regulations promulgated under it provide a comprehensive regulatory scheme for pesticides. Additionally, concerning the authority of states to regulate FIFRA covered chemicals, FIFRA provides:
(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
7 U.S.C. § 136v(b).

17. This section provides that:
A state may regulate the *sale or use* of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
7 U.S.C. § 136v(a) (emphasis supplied).