76 F.Supp.2d 1178 (1999)
Hester M. CAMERON, et al., Plaintiffs,
v.
NAVARRE FARMERS UNION COOPERATIVE ASSOCIATION, and North Central Kansas Cooperative Association, Defendants/Cross-claim Plaintiffs,
and
The United States Department of Agriculture Commodity Credit Corporation, Defendant/Cross-claim Defendant.
No. 99-1100-JTM.
United States District Court, D. Kansas.
November 19, 1999.
*1179 Randall K. Rathbun, Depew and Gillen, L.L.C., Wichita, KS, for Plaintiffs.
Christina L. Medeiros, Office of United States Attorney, Wichita, KS, for Defendant Commodity Credit Corp.
Charles P. Efflandt, Foulston & Siefkin L.L.P., Wichita, KS, for Defendants Navarre Farmers Union Co-op. Ass'n, North Cebtral Kan. Co-op. Ass'n, Navarre Farmers Union Co-op Ass'n.

ORDER
MARTEN, District Judge.
The court has at hand the United States Department of Agriculture Commodity Credit Corporation's ("USDA/CCC") motion to dismiss. Plaintiffs are asserting a cost-recovery cause of action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 et seq., against the Navarre Farmers Union Cooperative Association and the North Central Kansas Cooperative Association (jointly referred to as "the NCKC") and the USDA/ CCC. They have also alleged a common law nuisance claim against the NCKC. Plaintiffs seek a judgment against the USDA/CCC and the NCKC in an amount in excess of $1,500,000.00, plus their costs and any other and further relief the court deems just or equitable. The NCKC has asserted a cross-claim against the USDA/ CCC for contribution under CERCLA. The United States, on behalf of the USDA/ CCC, seeks dismissal of the plaintiffs' CERCLA claim and the NCKC's cross-claim. For the reasons set forth below, the government's motion is denied.

*1180 I. Facts
The plaintiffs are twelve families who reside in Navarre, Kansas, a small town in Dickinson County, located approximately twenty miles southeast of Abilene. They allege that the groundwater underlying their properties has been contaminated with the elements of certain pesticide products used, handled and stored by the USDA/CCC[1] and the NCKC on a nearby property historically operated as a grain storage and agricultural cooperative facility ("the Facility"). Specifically, plaintiffs attribute carbon tetrachloride detected in their groundwater to the operations and conduct of the USDA/CCC and allege that concentrations of nitrate in the groundwater are related to the NCKC's business activities. Because their groundwater has been contaminated, the plaintiffs have been required to spend money for an alternative water supply and will be required to do so for the foreseeable future.
The NCKC has filed an answer to the plaintiffs' complaint denying liability and denying that plaintiffs have suffered actionable damages as they have alleged. The NCKC has also filed a cross-claim against the USDA/CCC with respect to the plaintiffs' CERCLA cause of action. The NCKC has alleged that, in the event plaintiffs establish liability against the defendants under CERCLA's cost-recovery provisions, and should the NCKC be required to pay more than its equitable share of any recoverable damages, then it is entitled to contribution from the USDA/ CCC pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f).
The government seeks dismissal of the plaintiffs' CERCLA claim and the NCKC's cross-claim for contribution. It argues the plaintiffs' claim should be dismissed for two reasons. First, the pesticide it used to fumigate grain stored in bins at the Facility was a FIFRA-registered pesticide that was applied appropriately and in the customary manner. As such, its activities fall within CERCLA's pesticide exemption found at 42 U.S.C. § 9607(i). Second, the government argues it is entitled to a dismissal under Fed.R.Civ.P. 12(b)(6) for the plaintiffs' failure to state a claim. Specifically, the government argues that the plaintiffs have failed to state that the costs they have incurred for an alternative water supply were "necessary" and "consistent with the National Contingency Plan ("NCP")."
The government further argues that if the plaintiffs' CERCLA claim survives, any cross-claim by the NCKC that is not premised on § 113(f) CERCLA contribution must be dismissed because (1) CERCLA § 113(f) preempts the NCKC's common law theories; and (2) the NCKC has not met the threshold requirement of identifying an applicable waiver of sovereign immunity.

II. The Plaintiffs' CERCLA Claim

A. Overview
In 1980, Congress enacted CERCLA "to facilitate the expeditious cleanup of environmental contamination caused by hazardous waste releases." Daigle v. Shell Oil Co., 972 F.2d 1527, 1533 (10th Cir. 1992). Congress amended CERCLA in 1986 by passing the Superfund Amendments and Reauthorization Act ("SARA") "to fortify its broad, remedial purpose `to facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefited from the wastes that caused the harm.'"[2]Public Serv. Co. v. Gates Rubber Co., 175 F.3d 1177, 1181 (10th Cir.1999) (quoting OHM Remediation Servs. v. Evans Cooperage Co., 116 F.3d 1574, 1578 (5th Cir.1997)). CERCLA provides two types of legal actions by *1181 which parties "can recoup some or all of their costs associated with hazardous waste cleanup: cost recovery actions under § 107(a), 42 U.S.C. § 9607(a), and contribution actions under § 113(f), 42 U.S.C. § 9613(f)." United States v. Colorado & Eastern R.R. Co., 50 F.3d 1530, 1535 (10th Cir.1995).
Section 107(a) imposes strict liability on four classes of "potentially responsible parties," ("PRPs"). Gates Rubber Co., 175 F.3d at 1181. The four categories of PRPs are: (1) any current "owner or operator" of a facility; (2) any past "owner or operator" of a facility at the time of disposal of the hazardous substance; (3) any person who arranged for disposal or treatment of a hazardous substance, owned or possessed by him, at a facility; and (4) any person who transported a hazardous substance to the facility. 42 U.S.C. § 9607(a)(1)-(4). Section 107(a) imposes joint and several liability on PRPs regardless of fault. Colorado & Eastern R.R. Co., 50 F.3d at 1535. To facilitate the cost shifting to all PRPs, CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under 9607(a) of this title." 42 U.S.C. § 9613(f).
To state a private cause of action under § 9607(a) a plaintiff must allege:
(1) defendant is a "covered person" within the meaning of CERCLA; (2) a "release" or "threatened release" of any "hazardous substance" from the site in question has occurred; (3) the release or threatened release caused plaintiff to incur costs; (4) plaintiff's costs are "necessary" costs of response; and (5) plaintiff's response action or cleanup was consistent with the NCP.
Gates Rubber Co., 175 F.3d at 1181 n. 5 (citing Channel Master Satellite, Sys., Inc. v. JFD Elecs. Corp., 748 F.Supp. 373, 381 (E.D.N.C.1990)).

B. Failure to State a Claim
In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all the well pleaded factual allegations of the complaint as true and must view them in the light most favorable to the non-moving party. Sutton v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir.1999). A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The federal rules "`erect a powerful presumption against rejecting pleadings for failure to state a claim.'" Maez v. Mountain States Tel. and Tel., Inc., 54 F.3d 1488, 1496 (10th Cir.1995) (quoting Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986)). "Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." Van Deelen v. City of Eudora, Kan., 53 F.Supp.2d 1223, 1227 (D.Kan.1999) (citing Cayman Exploration Corp. v. United Gas Pipe Line, 873 F.2d 1357, 1359 (10th Cir. 1989)).
The government claims the plaintiffs have failed to allege that they have incurred costs that are "necessary" and "consistent with the NCP," one of the elements of a claim under § 9607(a). Plaintiffs argue that whether their response costs were necessary and consistent with the NCP are conclusions of law that must be demonstrated at trial. They further argue that they need not plead each and every element of their claim under Fed. R.Civ.P. 8. The NCKC argues that even though "Plaintiffs do not actually use the phrase `National Contingency Plan,' drawing all reasonable inferences in favor of the Plaintiffs, their allegation that they are entitled to recover such response costs would necessarily include the contention that such costs were consistent with the *1182 National Contingency Plan." NCKC mem. at 11.
"The national contingency plan (NCP) is a set of regulations promulgated by EPA that `establish[es] procedures and standards for responding to releases of hazardous substances.'" County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1511 (10th Cir. 1991) (quoting 42 U.S.C. § 9605 and citing 40 C.F.R. Part 300 (1988)). "Consistency with the NCP is not only an essential element of proof under § 9607(a) but also becomes the lynchpin for § 9613(f) contribution." Gates Rubber Co., 175 F.3d at 1181 n. 5.
A "fully developed record" must exist before the court is able to determine consistency with the NCP. See id. at 1180 ("Because the record before the district court was fully developed, it was appropriate for it to decide whether PSCO met its prima facie burden of establishing NCP consistency."); Tinney, 933 F.2d at 1513 ("In cases such as this one, however, where there is a fully developed record on which to make the NCP consistency determination, there is nothing to be gained by delaying this determination until trial.").
At this stage of the proceeding, a fully developed record has not been established. Thus, the NCP issue is not ripe for the court's consideration. By accepting all the well pleaded factual allegations of the complaint as true and viewing those allegations in the light most favorable to the plaintiffs, the court finds that the plaintiffs have adequately pled a cause of action under § 9607(a).

C. Pesticide Exemption: 42 U.S.C. § 9607(i)
CERCLA exempts from liability the application of certain pesticides. Section 9607(i) provides that: "No person ... may recover under the authority of this section for any response costs or damages resulting from the application of a pesticide product registered under the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C.A. § 136 et seq.]." 42 U.S.C. § 9607(i). The purpose of CERCLA's pesticide exemption is "to prevent the typical pesticide user from incurring CERCLA liability when he has done nothing more than purchased and applied a pesticide in the customary manner." Jordan v. Southern Wood Piedmont Co., 805 F.Supp. 1575, 1581 (S.D.Ga.1992); see also Beers v. Williams Pipe Line Co., No. 93-C-2189-EEO, 1994 WL 477187, at *5 (D.Kan. Aug. 24, 1994) ("[E]ven if a registered pesticide was used, defendant is not exempted from liability unless it applied the [pesticide] in the customary manner.").
CERCLA exempts the "application" of a covered pesticide from liability. "[A]lthough CERCLA does not define `application,' not everything done with a pesticide is an application." State v. Almy Brothers, Inc., No. 90-CV-818, 1998 WL 438523, at *5 (N.D.N.Y. July 31, 1998). For instance, CERCLA "retains liability for a `release' of such a pesticide." Id. CERCLA defines a "release" as: "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)." 42 U.S.C. § 9601(22). "Like other parts of CERCLA, the definition of release has been construed broadly, and can include ... hazardous substances leaching into the soil and groundwater." United States v. Morrison-Quirk Grain Corp., No. CV88-L-720, 1990 WL 482139, at *4 (D.Neb. May 4, 1990).
As the party seeking to take advantage of the statutory exemption provided by 42 U.S.C. § 9607(i), the government bears the burden of proof. Id. at *2; see also Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1511 (11th Cir. 1996) (affirming the district court's finding that the defendant could not be held liable for the alleged disposal of FIFRA-registered pesticides because plaintiff failed to produce "any evidence refuting [the defendant's] proof that [the] pesticides were *1183 properly applied.") (emphasis added). Thus, the government must show that the grain fumigant it used was registered under FIFRA and that it applied it in a customary manner.
The government argues that the grain fumigant was "applied" to the grain, and that because it was registered under FIFRA, the application exempts it from liability. The government's liability will depend upon whether a proper "application" occurred, an issue that currently cannot be determined because the parties have not been given an opportunity for full discovery. See Morrison-Quirk, 1990 WL 482139, at *2 (finding that the defendant's liability depended upon "whether or not the court determines that an `application' occurred" and further finding that it "would be premature for the court to decide this issue before the parties are given an opportunity for full discovery on it.") (citation omitted). At this point, there is no proof that the fumigant was FIFRA-registered or that the government applied the fumigant in a customary manner, only the government's allegations. Therefore, the court must deny the government's motion to dismiss without prejudice to the exemption being raised again once discovery is complete.

III. The NCKC's Cross-Claims
In its cross-claim against the USDA/ CCC, the NCKC claims that it is entitled to contribution arising under "federal and state common law." The government argues that if the plaintiffs' claims survive, the NCKC's cross-claims that are not premised on CERCLA contribution, 42 U.S.C. § 9613(f), should be dismissed because: (1) CERCLA preempts the NCKC's common law theories; and (2) the NCKC has not met the threshold requirement of identifying an applicable waiver of sovereign immunity.
The NCKC admits that its reference in its cross-claim to other rights of contribution under common law may be premature. It claims it worded its cross-claim in that manner because it anticipated that the plaintiffs may amend their complaint to assert tort claims against the USDA/CCC pursuant to the Federal Tort Claims Act. The NCKC states that if and when plaintiffs assert additional claims, it will amend its cross-claim to allege any appropriate common law contribution rights and at that time will address the sovereign immunity issue.
The court finds that the government's sovereign immunity defense is premature given the liberal pleading standards. Therefore, its motion to dismiss the NCKC's contribution claims pursuant to state law is denied without prejudice to being raised again as the case matures.
NOTES
[1] Plaintiffs allege that the USDA/CCC owned or operated the Facility from the early 1950s to the 1970s. NCKC was formed on January 1, 1994, and on that same date, commenced its ownership and operation of the Facility.
[2] Further references to CERCLA are to the statute as amended.